16 F.3d 416
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Ferris Wayne GRIGGS, Petitioner-Appellant,
v.
STATE of Kansas, Attorney General of the State of Kansas,
Respondents-Appellees.
 No. 93-3098.
 United States Court of Appeals, Tenth Circuit.
 Dec. 14, 1993.
 
 Before ANDERSON and EBEL, Circuit Judges, and WINDER,** District Judge.
 ORDER AND JUDGMENT[1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 Petitioner Ferris Wayne Griggs appeals from an order of the district court denying his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. 2254. See Griggs v. State, 814 F.Supp. 60 (D. Kan.1993). We affirm.
 In 1989, petitioner was convicted by a jury of rape. He was sentenced to fifteen to thirty years' imprisonment. After exhausting his state court remedies, petitioner initiated this action in which he alleged that the evidence was insufficient to support his conviction on the charge of violating Kan. Stat. Ann. 21-3502(1)(c)(rape of a person unable to give consent due to a mental deficiency or disease which was reasonably apparent to the defendant).[2] Petitioner asserted that the evidence did not show the victim was unable to give her consent, but rather only that she was unable to use her best judgment. He alleged the victim understood her right to refuse any unwanted sexual advances and, even if the victim could not give her consent, he did not know she was incapable of giving consent.
 We review the district court's determination as to the sufficiency of the evidence de novo. United States v. Grimes, 967 F.2d 1468, 1472 (10th Cir.), cert. denied, 113 S.Ct. 355 (1992).
 The Constitution prohibits criminal convictions "except upon proof of guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 309 (1979). Therefore, to prevail on a sufficiency of the evidence claim, a petitioner in a 2254 proceeding must show he was denied "the most elemental of due process rights: freedom from a wholly arbitrary deprivation of liberty." Id. at 314. In reviewing such a claim, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Cordoba v. Hanrahan, 910 F.2d 691, 694 (10th Cir.), cert. denied, 498 U.S. 1014 (1990)(quoting Jackson, 443 U.S. at 319).
 At the time of petitioner's conviction, Kan. Stat. Ann. 21-3502 provided:
 (1) Rape is sexual intercourse with a person who does not consent to the sexual intercourse, under any of the following circumstances:
 ....
 (c) when the victim is incapable of giving consent because of mental deficiency or disease, which condition was known by the offender or was reasonably apparent to the offender.
 Thus, to obtain a conviction, the state must present sufficient evidence showing not only that the victim was incapable of giving consent, but also that the defendant should have been aware that the victim could not give consent. The following evidence was presented as to the first element:
 The victim was diagnosed as having: (1) a dystymic disorder which is a "depression that tends to go on and on and on, and may have a biological basis," trial tr. at 35; (2) a borderline personality disorder which "implies an instability in the ability to maintain a course of emotions, a course of clear thinking, and a course of ability to have the energy to do what needs to be done," id. at 36; and (3) a convulsive disorder. A psychiatrist testified that the victim appears "at least somewhat infantile in her responses, or at least I would compare her in my own mind at times with a 12or 13-year-old person who may have knowledge but not all the equipment to operate according to knowledge." Id. at 38. He further stated that when the victim becomes frightened, "her judgment gets impaired," id. at 41, and she is not "clear in her mind as to what her best interest is" when under emotional stress, id. at 60.
 The victim's case manager testified that the victim "has great difficulty in terms of her ability to accurately perceive others correctly, to perceive situations in her environment correctly, to understand in a reasonable fashion what's going on around her at times. She frequently will misinterpret the intentions of others, feelings of others, that they have towards her." Id. at 140-41. The victim validated this testimony when she testified: "He told me his name before I got in [the truck], and we shook hands. When he was asking me if I wanted a ride, he was looking at me straight in the eye, and I trusted him then." Id. at 75. Later, petitioner's behavior scared her and she did not think about getting out of the truck. This evidence was sufficient to permit the jury to find that the victim was unable to give her consent.
 The state also presented sufficient evidence to show petitioner knew the victim could not give her consent.
 "[A] potential offender must simply determine if his or her partner understands the nature and consequences of engaging in the sex act. Under normal circumstances a mental incapacity to consent would be apparent in ordinary social intercourse. The potential offender who would engage in sex acts with a stranger may be required to ask questions to be 'safe,' just as he or she would be required to do in order to ascertain the other's chronological age to avoid prosecution...."
 Keim v. State, 777 P.2d 278, 280 (Kan. Ct.App.1989) (quoting State v. Sullivan, 298 N.W.2d 267, 272-73 (Iowa 1980)).
 Here, petitioner admitted at trial that he knew the victim was "slow." Further, a police sergeant testified that when defendant called the police, he said "he didn't feel he had done anything wrong because the girl had a mental problem." Trial tr. at 185. Petitioner was on notice that he should inquire further.
 The judgment of the United States District Court for the District of Kansas is AFFIRMED.
 EBEL, J. dissenting
 
 
 1
 In my judgment, there was inadequate evidence in this record to convict the defendant under Kan. Stat. Ann. 21-3502(1)(c). The evidence revealed that the victim had an IQ of eighty-two; that she suffered from epilepsy; that she had attempted suicide in the past; and that she had a borderline personality disorder that could cause her to make poor judgments when placed under stress. These factors do not, either individually or collectively, rise to the level of causing the victim to be "incapable of giving consent." Even if the defendant was on notice of the victim's mental deficiencies and medical difficulties, an inquiry that revealed only the above facts would not have revealed that the victim was incapable of giving consent or that she did not understand the nature and consequences of the sex act. Indeed, her protestations to the defendant during his assault reveal that she did understand the nature and consequences of the act being forced upon her.
 
 
 2
 The evidence was certainly adequate in this case to convict the defendant under Kan. Stat. Ann. 21-3502(1)(a), which prohibits rape by force. However, the jury was instructed that it could convict under either 3502(1)(a) or 3502(1)(c). Because the jury returned a general verdict, and because I do not believe the evidence was adequate under 3502(1)(c), I believe the conviction should be reversed and the matter remanded for retrial only on 3502(1)(a). Thus, I respectfully dissent.
 
 
 
 **
 Honorable David K. Winder, Chief Judge, United States District Court for the District of Utah, sitting by designation
 
 
 [1]
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir. R. 36.3
 
 
 [2]
 Petitioner was convicted of violating both section 21-3502(1)(a) (rape by force) and section 21-3502(1)(c). Petitioner does not argue that the evidence was insufficient to convict him of violating section 21-3502(1)(a). However, he contends that because he was charged under alternative theories, the jury returned a general verdict of guilty, and the evidence was insufficient to convict him of violating section 21-3502(1)(c), his conviction must be reversed. Petitioner cites Zant v. Stephens, 462 U.S. 862 (1983), in support of this proposition. Because we find the evidence sufficient to permit the jury to find petitioner guilty of violating section 21-3502(1)(c), we do not reach this issue